1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE CHRISTOPHER SMITH, | Case No. 1:19-cv-00271-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |
| v. | |
| KRISTOPHER CAMBPELL, *et al.*, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | **FOURTEEN-DAY DEADLINE** |

Plaintiff Lawrence Christopher Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. Plaintiff initiated this action on February 14, 2019, and the matter was transferred to this Court on February 27, 2019. (ECF Nos. 1, 3.) On July 12, 2019, Plaintiff participated in an unsuccessful settlement conference before Magistrate Judge Stanley A. Boone. (ECF No. 14.) Thereafter, Plaintiff lodged two proposed first amended complaints on September 26, 2019, (ECF No. 16), and December 2, 2019, (ECF No. 17).

The Court construed the lodged first amended complaints as motions to amend the complaint. As the complaint has not yet been screened and no defendants have appeared in this action, the Court accepted the most recently lodged first amended complaint, submitted on

1

1  December 2, 2019, as the operative complaint.  Plaintiff's first amended complaint superseded the

2  original complaint. The Court screened the first amended complaint and granted leave to amend.

3  (ECF No. 17, 20.)  Plaintiff filed a second amended complaint was filed on August 31, 2020.

4  (ECF No. 22.)  Also currently before the Court is Plaintiff's motion to amend and supplement the

5  complaint and proposed third amended complaint, filed September 11, 2020.  (ECF Nos. 23, 24.)

6  **I.      Motion to Amend**

7        In Plaintiff's motion to amend and supplement the complaint, Plaintiff argues that the

8  pleadings in several of his pending actions warrant the filing of a single complaint before the

9  Court.  Plaintiff acknowledges that several of these actions were originally filed as a single action,

10  which this Court then severed into several new cases.[1]  In addition, Plaintiff acknowledges that he

11  has tried on several occasions, in several of these actions, to have the cases consolidated into a

12  single complaint, but has been unsuccessful.  Plaintiff argues that all of the actions should

13  nevertheless be consolidated and his third amended complaint be accepted for adjudication.  (ECF

14  No. 23.)

15        **A.      Motion to Amend Legal Standard**

16        Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's

17  pleading once as a matter of course at any time before a responsive pleading is served.

18  Otherwise, a party may amend only by leave of the court or by written consent of the adverse

19  party.  Fed. R. Civ. P. 15(a).  "Rule 15(a) is very liberal and leave to amend shall be freely given

20  when justice so requires."  AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951

21  (9th Cir. 2006) (citation and quotation omitted).

22        However, courts "need not grant leave to amend where the amendment: (1) prejudices the

23  opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is

24  futile."  Id.  These factors do not carry equal weight.  Prejudice is the most important factor to

---

[1] Plaintiff references the pleadings in the following cases: (1) Smith v. Chanelo, Case No. 1:16-cv-01356-NONE-BAM; (2) Smith v. Knowlton, Case No. 1:18-cv-00851-NONE-BAM; (3) Smith v. Weiss, Case No. 1:18-cv-00852-NONE-BAM; (4) Smith v. Gibbs, Case No. 1:18-cv-00854-NONE-BAM; and Smith v. Parriot, Case No. 1:19-cv-00286-GSA.  The Court takes judicial notice of these actions and the pleadings filed therein.

1 consider.  Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

2 **B.  Discussion - Motion to Amend**

3 Pursuant to Federal Rule of Civil Procedure 15, Plaintiff may amend his complaint "**once**

4 as a matter of course**" before a responsive pleading is served.  Fed. R. Civ. P. 15(a)(1) (emphasis

5 added).  "In all other cases, a party may amend its pleading only with the opposing party's written

6 consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

7 Plaintiff initiated this action on February 14, 2019.  In total, Plaintiff has filed or lodged

8 five separate complaints and amended complaints in this action, (ECF Nos. 1, 16, 21, 22, 24), and

9 the Court has issued one screening order granting Plaintiff leave to file a second amended

10 complaint, (ECF No. 20).  Plaintiff has already amended his complaint once as a matter of course,

11 (ECF No. 21), and filed a second amended complaint with leave of the Court, (ECF No. 22).

12 Plaintiff therefore requires further leave of Court to file his proposed third amended complaint.

13 Furthermore, the Court is aware, and Plaintiff acknowledges, that he has repeatedly

14 attempted to consolidate a myriad of unrelated claims and defendants into a single action, over

15 the course of several years and in a handful of separate and unrelated actions.  See, e.g., Smith v.

16 Chanelo, Case No. 1:16-cv-01356-NONE-BAM, ECF Nos. 20, 22–24, 29, 41–42, 44–47, 64;

17 Smith v. Knowlton, Case No. 1:18-cv-00851-NONE-BAM, ECF Nos. 6, 16; Smith v. Weiss,

18 Case No. 1:18-cv-00852-NONE-BAM, ECF Nos. 25–26, 28, 48; Smith v. Gibbs, Case No. 1:18-

19 cv-00854-NONE-BAM, ECF Nos. 25–26, 29.

20 Those attempts have repeatedly been analyzed and rejected by the Court.  See, e.g., Smith

21 v. Chanelo, Case No. 1:16-cv-01356-NONE-BAM, ECF Nos. 27, 58–59; Smith v. Knowlton,

22 Case No. 1:18-cv-00851-NONE-BAM, ECF No. 8; Smith v. Weiss, Case No. 1:18-cv-00852-

23 NONE-BAM, ECF Nos. 27, 38; Smith v. Gibbs, Case No. 1:18-cv-00854-NONE-BAM, ECF No.

24 28.  Plaintiff has been provided with the applicable legal standards required to plead his claims,

25 and yet he persists in filing motions to amend and motions for reconsideration or relief from

26 judgment that seek exactly the same relief that has been repeatedly rejected by the Court.

27 In light of Plaintiff's history of litigation, in this action and his other actions which he

28 seeks to consolidate with this action, the Court finds that Plaintiff's motion to amend to

3

1    consolidate all of his claims in a single action and complaint is brought in bad faith and would

2    produce an undue delay in litigation.  Furthermore, as this request has been repeatedly denied by

3    the Court in these prior actions, the Court finds that granting leave to file such an amended

4    complaint would be futile.  AmerisourceBergen Corp., 465 F.3d at 951.

5       The Court will not expend additional resources screening a complaint which Plaintiff is

6    well aware contains numerous misjoined claims and defendants and goes directly against the

7    Court's prior screening orders identifying the deficiencies in Plaintiff's proposed amended

8    complaints consolidating his cases.

9       **C.  Order on Motion to Amend**

10      Based on the foregoing, Plaintiff's motion for leave to amend and supplement the

11    complaint, (ECF No. 23), is HEREBY DENIED.  Plaintiff's second amended complaint, filed

12    August 31, 2020, (ECF No. 22), remains the operative complaint, and will now be screened.

13      **II.**      **Screening Requirement and Standard**

14      The Court now turns to screening the second amended complaint.  The Court is required

15    to screen complaints brought by prisoners seeking relief against a governmental entity and/or

16    against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's

17    complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to

18    state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant

19    who is immune from such relief.  28 U.S.C. §§ 1915A(b).

20      A complaint must contain "a short and plain statement of the claim showing that the

21    pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

22    required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

23    conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

24    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken

25    as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores,

26    Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

27      To survive screening, Plaintiff's claims must be facially plausible, which requires

28    sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

1   for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S.

2   Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted

3   unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

4   plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

5   **III.      Plaintiff's Second Amended Complaint**

6              Plaintiff is currently housed at Corcoran State Prison in Corcoran, California.  The events

7   in the second amended complaint are alleged to have occurred while Plaintiff was housed at the

8   California Correctional Institution ("CCI") in Tehachapi, California.  Plaintiff names the

9   following defendants (all defendants are employed at CCI unless otherwise identified):

10  (1) Correctional Lieutenant Kristopher Campbell; (2) Secretary John Doe of CDCR;

11  (3) Municipality of Kern County; (4) Kern County District Attorney Lisa S. Green; (5) Chief at

12  CDCR Office of Appeals (Sacramento) M. Voong; (6) Warden Kim Holland; (7) Associate

13  Warden J. Gutierrez; (8) Associate Warden Patrick Matzen; (9) Chief Deputy Warden E. Garcia;

14  (10) Captain M. Lopez; (11) Captain M. Hodges; (12) Lieutenant M. Slankard; (13) Lieutenant

15  M. Reyes; (14) Lieutenant Brian L. Parriot; (15) Lieutenant T. Kephart; (16) Kern County Deputy

16  District Attorney L. Gordon Isen; (17) Sergeant J. Parker; (18) Sergeant T. Clayton; (19) Sergeant

17  Andres Cantu; (20) Correctional Officer J. Davis; (21) Correctional Officer Eric Young;

18  (22) Correctional Officer Erik Martinez;  (23) Correctional Officer Scott Hollingsworth and (24)

19  Correctional Officer Jose Uribe.

20             Although Plaintiff's second amended complaint is relatively short, the allegations are

21  confusing and do not set out a chronology of facts and alleges conclusory and disjointed

22  statements.  Nevertheless, as best the Court can determine, the Court summarizes the allegations

23  in the chronology alleged:

24             On February 4, 2015, while incarcerated at CCI, and in Security Housing Unit (SHU)

25  inmate movement was conducted through the use of mechanical restraints and hands on escort.

26  On February 4, 2015, Defendant Cantu, Young and Martinez used illegal physical force injuring

27  Plaintiff with lacerations, bruising and swelling to the torso, legs, head and face, chemical burns

28  to the face and neck.  Plaintiff suffered a severe asthma attack due to the use of chemical agent

5

1   (OC pepper spray).

2       As Plaintiff was finishing up his shower program and secured shower, Defendant Uribe

3   falsely accused Plaintiff of retaining a disposable razor.  Because of this accusation, Plaintiff was

4   immediately placed in a holding cell located in the dayroom of the housing unit.  Defendant

5   Campbell ordered Plaintiff to submit to a strip search and if the razor was not retained from

6   Plaintiff's possession following the search, Plaintiff would have to submit to a metal sweep

7   brought a metal detector in the dining hall #4 on Facility 4B. Plaintiff submitted to both an

8   unclothed body search and a metal sweep in which no contraband was found.  Defendant Cantu

9   and Young escorted Plaintiff to his assigned unit, which was monitored by Defendant Campbell.

10   For no reason, Defendant Cantu threw Plaintiff to the ground face first where he and Defendant

11   Young struck Plaintiff with their hands, feet and batons with multiple officers responded.

12   Defendant Martinez assisted Defendants Cantu and Young continued and ceased only after

13   Defendant Cantu dispersed an entire contents of OC pepper spray while Plaintiff was on the

14   ground with mechanical restraints on.  They then put searing mechanical restraints on Plaintiff

15   wrists and dragged him to the courtyard, where he was dowsed with cool water.  Plaintiff was

16   taken to a registered nurse.  (Doc. 22 p.7:5)

17       Plaintiff was interviewed by investigative services unit Defendant Clayton where Plaintiff

18   said what happened to him.  Plaintiff was rehoused in strip cell located in unit 8 facility 4B.

19   Plaintiff alleges that a false crime report was written against him for assault of officer Cantu by

20   Defendants Cantu, Young, Martinez, Clayton, Hollingsworth, Slankard, Parker, Parriot, Lopez,

21   Campbell, Gutierriez, Matzen, Kephart, Garcia and Lopez.  They ignored the evidence of Plaintiff

22   being subject to excessive force.

23       During the CDCR adjudication process for the assault charge, Defendant Parriot was

24   assigned as the Senior Hearing Officer.  Defendant Parriot illegally held the hearing and entered a

25   finding of guilt with insufficient evidence.  Plaintiff challenged the guilt finding through the

26   administrative process, and Defendants Voong, Garcia, Hodges, Reyes, Holland, and Gutierrez

27   upheld the ruling.  Plaintiff alleges what happened to him was based either on a direct order by

28   Defendant Doe or due to inadequate training of defendants.  These actions were in retaliation.

1      Plaintiff alleges that Defendants Holland, Gutierrez, Matzen, Garcia, Lopez, Hodges,

2  Slankard, Reyes, Parriot, Kephart, Clayton, Parker, Davis, Young, Martinez and Hollingsworth

3  used "the States Penal system to assess and impose illegal terms of confinement within CDCR."

4  Defendant Green and Isen initiated a malicious prosecution against Plaintiff for an alleged assault

5  of Cantu and failed to protect from the named defendants use of a code of silence.  Plaintiff has

6  been harmed with the illegal terms of confinement assessed against based on false claim that

7  Plaintiff had assaulted Cantu.

8      Plaintiff alleges that all of the defendants have conspired against him for having seeking

9  redress for an illegal conviction and for "initiating civil against state law enforcement personnel

10  for their transgressions against" Plaintiff.  Plaintiff alleges that the local government enforcement

11  personnel employed within Kern County District Attorney's office, the municipality of Kern

12  County and CDCR have all have conspired against him as pleaded above.

13      Plaintiff asserts claims for excessive force, cruel and unusual punishment, deliberate

14  indifference and retaliation.

15      Plaintiff seeks compensatory damages and punitive damages, expungement from his

16  correctional file the false finding of guilt, restoration of loss of credits due to the disciplinary

17  finding.

18  **IV.    Discussion**

19      **A.    Federal Rule of Civil Procedure 8**

20      Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim

21  showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement

22  must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon

23  which it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal

24  quotation marks omitted).

25      Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

26  cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678

27  (citation omitted).  This is because, while factual allegations are accepted as true, legal

28  conclusions are not.  Id.; see also Twombly, 550 U.S. at 556–57; Moss, 572 F.3d at 969.

1    Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to

2    relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual

3    content that allows the court to draw the reasonable inference that the defendant is liable for the

4    misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

5          Most of Plaintiff's allegations are vague and conclusory statements, or citations to various

6    codes or constitutional provisions.  Once again, as currently pled, Plaintiff's second amended

7    complaint does not contain enough factual details to permit the Court to draw the reasonable

8    inference that most of the Defendants are liable for the misconduct alleged.  Iqbal, 556 U.S. at

9    678.   The same deficiency exists as was previously identified in the Court's prior screening

10   order.  Plaintiff has been unable to cure these deficiencies.

11         **B.       Supervisory Liability**

12         In general, Plaintiff may not hold a defendant liable solely based upon their supervisory

13   positions.  Liability may not be imposed on supervisory personnel for the actions or omissions of

14   their subordinates under the theory of respondeat superior.  Iqbal, 556 U.S. at 676–77; Simmons

15   v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588

16   F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

17   Supervisors may be held liable only if they "participated in or directed the violations, or knew of

18   the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

19   1989); accord, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570

20   (9th Cir. 2009).  Plaintiff may also allege the supervisor "implemented a policy so deficient that

21   the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the

22   constitutional violation.' " Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations

23   omitted).

24         Plaintiff names various individuals who hold supervisory level positions.  However, a

25   constitutional violation cannot be premised solely on the theory of respondeat superior, and

26   Plaintiff must allege that the supervisory defendants participated in or directed conduct associated

27   with his claims or instituted a constitutionally deficient policy.  Plaintiff alleges conclusory

28   allegations that Defendant John Doe authorized the other named CCI defendants to utilize

8

physical force against Plaintiff.  Plaintiff does not describe any specific action taken by these

defendants or specific policy, but instead offers vague and conclusory allegations of the

involvement of these defendants in alleged constitutional violations.  Such conclusory allegations

are insufficient to state a cognizable claim.  Despite being provided the relevant pleading

standards, Plaintiff has been unable to cure this deficiency.

### C.     Municipal Liability

Plaintiff names the Municipality of Kern County as a defendant.

A local government unit may not be held responsible for the acts of its employees under a

respondeat superior theory of liability.  Monell v. Dep't of Soc. Services, 436 U.S. 658, 691

(1978); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Webb v. Sloan, 330 F.3d

1158, 1163–64 (9th Cir. 2003).  Rather, a local government unit may only be held liable if it

inflicts the injury complained of.  Monell, 436 U.S. at 694; Gibson, 290 F.3d at 1185.

Generally, a claim against a local government unit for municipal or county liability

requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force'

behind the constitutional violation . . . suffered."  Galen v. Cty. of Los Angeles, 477 F.3d 652,

667 (9th Cir. 2007); City of Canton, Ohio, v. Harris, 489 U.S. 378, 385 (1989).  Alternatively,

and more difficult to prove, municipal liability may be imposed where the local government unit's

omission led to the constitutional violation by its employee.  Gibson, 290 F.3d at 1186.  Under

this route to municipal liability, the "plaintiff must show that the municipality's deliberate

indifference led to its omission and that the omission caused the employee to commit the

constitutional violation."  Id.  Deliberate indifference requires a showing "that the municipality

was on actual or constructive notice that its omissions would likely result in a constitutional

violation."  Id.

Here, although Plaintiff names Kern County, he makes no allegations that would sustain

liability under Monell.  He does not allege facts to support a claim that an alleged constitutional

violation was the result of a deliberate policy, custom or practice instituted by Kern County.  He

also fails to allege that any omission on the part of Kern County caused an employee to commit a

constitutional violation.  Plaintiff as been unable to cure this deficiency.

1

### D.   Criminal Charges

2      Plaintiff also names Kern County District Attorney Lisa S. Green and Kern County

3  Deputy District Attorney L. Gordon Isen, and possibly others Kern County prosecutors, as

4  defendants.  Plaintiff appears to allege that these defendants are liable for criminally prosecuting

5  Plaintiff.

6      Plaintiff's claims against Defendant Green were done in connection with the criminal

7  prosecution of Plaintiff and, therefore, Defendant Green, and any other prosecutor, is entitled to

8  absolute prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976) (A

9  prosecutor is entitled to absolute immunity from a Section 1983 action for damages when he or

10  she performs a function that is "intimately associated with the judicial phase of the criminal

11  process."); Forte v. Merced Cty., No. 1:15-CV-0147 KJM-BAM, 2016 WL 159217, at *12–13

12  (E.D. Cal. Jan. 13, 2016) ("prosecutorial immunity protects eligible government officials when

13  they are acting pursuant to their official role as advocate for the state"), report and

14  recommendation adopted, No. 1:15-CV-0147-KJM-BAM, 2016 WL 739798 (E.D. Cal. Feb. 25,

15  2016).

16

### E.      Eighth Amendment – Excessive Force

17      Plaintiff alleges that Defendants Cantu, Young and Martinez used excessive force in

18  violation of Plaintiff's Eighth Amendment rights on February 4, 2015.  The Eighth Amendment

19  protects prisoners from inhumane methods of punishment and from inhumane conditions of

20  confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  The unnecessary and

21  wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth

22  Amendment. Hudson v McMillian, 503 U.S. 1, 5 (1992) (citations omitted).  Although prison

23  conditions may be restrictive and harsh, prison officials must provide prisoners with food,

24  clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825,

25  832–33 (1994) (quotations omitted).

26      For claims of excessive physical force, the issue is "whether force was applied in a good-

27  faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

28  Hudson, 503 U.S. at 7.  Relevant factors for this consideration include "the extent of injury . . . [,]

10

the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 1078, 1085 (1986)).

Liberally construing the allegations, Plaintiff states a cognizable excessive force claim against Cantu, Young and Martinez for the incident on February 4, 2015.

### F.      Fourth Amendment – Strip Search

It is unclear if Plaintiff is attempting to assert a claim based upon the strip search.

"The Fourth Amendment prohibits only unreasonable searches." Bell v. Wolfish, 441 U.S. 520, 558 (1979).  Courts regularly recognize the importance and difficulty of keeping detention facilities free from drugs, weapons, and other contraband. Id. at 559; see also Way v. Cty. of Ventura, 445 F.3d 1157, 1161 (9th Cir. 2006).  However, courts also recognize the "frightening and humiliating invasion" occasioned by a strip search "even when conducted with all due courtesy." Way, 445 F.3d at 1160 (internal quotation marks omitted); Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1143 (9th Cir. 2011).  Although some visual body cavity searches of prisoners may be reasonable, others can "be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder v. Sumner, 860 F.2d 328, 322 (9th Cir. 1988).  There is no precise definition to assess reasonableness, and each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559.  The prisoner "bears the burden of showing that [prison] officials intentionally used exaggerated or excessive means to enforce security." Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (quoting Michenfelder, 860 F.2d at 333) (finding visual body cavity search conducted in full view of other inmates and intended to detect illicit drugs was reasonably related to a legitimate penological interest).

Here, Plaintiff's second amended complaint fails to demonstrate that the strip search at issue was unreasonable.  Plaintiff's allegations do not sufficiently demonstrate that the single search at issue was excessive, vindictive, or harassing.  There are no facts except that that the search was related to a legitimate penological interest.  Plaintiff's claim that he was wrongly charged with keeping a razor after the shower fails to support a finding that the search was

11

1  unreasonable.  Plaintiff has been unable to cure this deficiencies in the claim.

2       **G.**     **False Crime Report**

3       Plaintiff alleges that Defendants Cantu, Young, Martinez, Clayton, Hollingsworth,

4  Slankard, Parker, Parriot, Lopez, Campbell, Gutierriez, Matzen, Kephart, Garcia and Lopez

5  authored a Crime Report against Plaintiff following the alleged use of force, which falsely

6  accused Plaintiff of assaulting Defendant Cantu.

7       The issuance of a false RVR or false crime report does not, in and of itself, support a

8  claim under section 1983.  See, e.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at

9  *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials

10 lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.' ") (citing

11 Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, No. 11-cv-02827-

12 JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally

13 protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, No. C 11-

14 5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands

15 due process, not error-free decision-making.")); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN

16 (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally

17 guaranteed right to be free from false accusations of misconduct, so the mere falsification of a

18 [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v.

19 Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951–53 (2d.

20 Cir. 1986)).  Accordingly, any assertion by Plaintiff that disciplinary charges against him were

21 false, without more, fails to state a cognizable due process claim.

22      **H.**     **Eighth Amendment – Failure to Intervene**

23      To the extent Plaintiff is alleging that any of the other Defendants were present during the

24 alleged excessive use of force and failed to intervene, Plaintiff also fails to state a cognizable

25 claim.

26      Prison officials have a duty to take reasonable steps to protect inmates from physical

27 abuse.  Farmer, 511 U.S. at 832–33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

28 "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."

1    Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

2          Based on the conclusory allegations in the second amended complaint, it is not clear to the

3    Court that any of these Defendants were actually present during the alleged incident.  To the

4    extent Plaintiff alleges that these defendants failed to intervene in the filing of the false crime

5    report, Plaintiff fails to state a cognizable claim, as discussed above.  Plaintiff has been unable to

6    cure the deficiencies in this claim.

7          **I.      Due Process**

8          Plaintiff alleges that Defendants Parriot, Voong, Garcia, Hodges, Reyes, Holland, and

9    Gutierrez adjudicated the allegedly false charge of Plaintiff assaulting Defendant Cantu, and

10   sustained the allegation of guilt against Plaintiff for the charge.

11         "When protected interests are implicated, the right to some kind of prior hearing is

12   paramount . . . ."  Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) (quoting Board of Regents

13   of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972)).  However, "[p]rison disciplinary

14   proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant

15   in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  With

16   respect to prison disciplinary proceedings, the minimum procedural requirements that must be

17   met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner

18   receives written notice and the time of the hearing, so that the prisoner may prepare his defense;

19   (3) a written statement by the fact finders of the evidence they rely on and reasons for taking

20   disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting

21   him to do so would not be unduly hazardous to institutional safety or correctional goals; and

22   (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

23   complex.  Id. at 563–71.  As long as the five minimum Wolff requirements are met, due process

24   has been satisfied.  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other

25   grounds by Sandin v. Connor, 515 U.S. 472 (1995).  In addition, "some evidence" must support

26   the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the

27   evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.

28   1987).  The "some evidence" standard is not particularly stringent, and the relevant inquiry is

1   whether "there is any evidence in the record that could support the conclusion reached . . . ." <u>Hill</u>,

2   472 U.S. at 455–56.

3        Plaintiff has not provided any allegations that his Due Process rights were violated when

4   the crime report was adjudicated, aside from his allegation that the crime report itself was

5   falsified.  Thus, Plaintiff's factual allegations fail to establish that the proceedings did not meet

6   the minimum procedural requirements.  Plaintiff has been unable to cure the deficiencies in this

7   claim.

8        **J.      First Amendment – Retaliation**

9        "Prisoners have a First Amendment right to file grievances against prison officials and to

10  be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012)

11  (citing <u>Brodheim v. Cry,</u> 584 F.3d 1262, 1269 (9th Cir. 2009) ).  "Within the prison context, a

12  viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

13  state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

14  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

15  (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>,

16  408 F.3d 559, 567–68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must

17  establish a nexus between the retaliatory act and the protected activity. <u>Grenning v. Klemme</u>, 34

18  F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

19       Plaintiff's allegations are conclusory and fail to allege that these Defendants knew of

20  Plaintiff's various civil actions and specifically took (or failed to take) actions because of those

21  civil actions.  In addition, Plaintiff has failed to allege the facts for each of the elements of a claim

22  for retaliation.  Plaintiff has been unable to cure the deficiencies in this claim.

23       **K.      Conspiracy**

24       To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an

25  agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation

26  of those constitutional rights.  <u>Avalos v. Baca</u>, 596 F.3d 583, 592 (9th Cir. 2010); <u>Franklin v. Fox</u>,

27  312 F.3d 423, 441 (9th Cir. 2001).  "[T]o state a claim for conspiracy under § 1985, a plaintiff

28  must first have a cognizable claim under § 1983."  <u>Olsen v. Idaho State Bd. of Med.</u>, 363 F.3d

1    916, 930 (9th Cir. 2004) (citation omitted).

2          Here, Plaintiff's second amended complaint fails to state a claim for conspiracy.  Plaintiff

3    has not adequately alleged a meeting of the minds or a deprivation of his constitutional rights.

4    Plaintiff makes general, omnibus allegations that the Defendants, in doing the myriad of acts

5    alleged, were doing so in the furtherance of some conspiracy.  Plaintiff must plead the basic

6    elements of a civil conspiracy: an agreement and concerted action amongst the defendants in the

7    furtherance of that agreement, and that each defendant conspired to violate Plaintiff's

8    constitutional rights.  See also Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)

9    (noting that a bare allegation of a conspiracy is almost impossible to defend against where

10   numerous individuals are concerned).  Plaintiff has been unable to cure this deficiency.

11         **L.      Restoration of Good Time Credits**

12         To the extent Plaintiff requests relief in the form of good time credits he lost as a result of

13   the finding of guilt for the allegedly false crime report and expungement of the guilty finding

14   from his record, it has long been established that state prisoners cannot challenge the fact or

15   duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus

16   relief.  Wilkinson v. Dotson, 544 U.S. 74, 78 (2005).  Often referred to as the favorable

17   termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies

18   whenever state prisoners "seek to invalidate the duration of their confinement-either directly

19   through an injunction compelling speedier release or indirectly through a judicial determination

20   that necessarily implies the unlawfulness of the State's custody."  Wilkinson, 544 U.S. at 81;

21   Heck v. Humphrey, 512 U.S. 477, 482, 486–87 (1994); Edwards v. Balisok, 520 U.S. 641, 644

22   (1997).  Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no

23   matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

24   (state conduct leading to conviction or internal prison proceedings)—if success in that action

25   would necessarily demonstrate the invalidity of confinement or its duration."  Id. at 81–82.

26          A judgment in favor of Plaintiff on his claim will necessarily imply the invalidity of the

27   disciplinary action, and Plaintiff has not demonstrated that the disciplinary action has been

28   "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

1   authorized to make such determination, or called into question by a federal court's issuance of a

2   writ of habeas corpus."  See e.g., Cox v. Clark, 321 Fed. Appx. 673, 676 (9th Cir. 2009)

3   (affirming dismissal of due process claim pursuant to Balisok to the extent that plaintiff sought

4   restoration of good-time credits and the reversal of a disciplinary decision); McCoy v. Spidle,

5   2009 WL 1287872, *7–*8 (E.D. Cal. May 6, 2009) ("A challenge under section 1983, seeking

6   only damages and declaratory relief for procedural due process violations is also barred if the

7   nature of the challenge would necessarily imply the invalidity of the deprivation of good-time

8   credits."). To the extent Plaintiff's claims challenge the fact or duration of his confinement, they

9   are not cognizable in a section 1983 action and must be brought by a writ of habeas corpus.

10      Further, to the extent Plaintiff if seeking damages for an allegedly unconstitutional

11   conviction or imprisonment by Kern County, "a § 1983 plaintiff must prove that the conviction or

12   sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

13   state tribunal authorized to make such determination, or called into question by a federal court's

14   issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88

15   (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not

16   been so invalidated is not cognizable under § 1983." Id. at 488.

17   **V.      Conclusion and Recommendations**

18      Based on the above, the Court finds that Plaintiff's second amended complaint states an

19   excessive force claims against Defendants Cantu, Young and Martinez.   Plaintiff fails to state any

20   other cognizable claims.  Despite being provided with the relevant pleading and legal standards,

21   Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not

22   warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

23      **In light of Plaintiff's history of seeking to consolidate his various cases, Plaintiff is**

24   **warned not to bring a motion to consolidate this action with his other actions.  Plaintiff is**

25   **admonished that the Court will consider a further motion to consolidate this action with**

26   **Plaintiff's other cases in a single action and complaint to be frivolous and brought in bad**

27   **faith, and this action will be subject to dismissal.**

28

Based on the foregoing, Plaintiff's motion for leave to amend and supplement the complaint, (ECF No. 23), is HEREBY DENIED.

The Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, IT IS HEREBY RECOMMENDED as follows:

1.     This action proceed on Plaintiff's second amended complaint, filed on August 31, 2020, on Plaintiff's excessive force claim against Defendants Cantu, Young and Martinez; and

2.     All other claims and all other defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted; and

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **September 25, 2020**          /s/ Barbara A. McAuliffe
                                                        UNITED STATES MAGISTRATE JUDGE